# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRENDA HOOD, | Case No.: 2:06-cv-01450-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#16; Motion to Strike–#20) |
| TRANSITIONAL HOSPITALS CORPORATION OF NEVADA, INC., a Nevada corporation, d/b/a KINDRED HOSPITAL LAS VEGAS; KINDRED HOSPITALS WEST, LLC, a foreign limited liability company; KINDRED HEALTHCARE OPERATING, INC., a foreign corporation; KINDRED HEALTHCARE, INC., a foreign corporation, | |
| Defendants. | |

Before the Court is Defendants Transitional Hospitals Corporation of Nevada, Inc. d/b/a Kindred Hospital Las Vegas, Kindred Hospitals West, LLC, Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc.'s **Motion for Summary Judgment** (#16), filed October 25, 2007. The Court has also considered Plaintiff Brenda Hood's Opposition (#17), filed November 13, 2007, and Defendants' Reply (#21), filed December 4, 2007.

/ /

1

Also before the Court is Defendants' **Motion to Strike** (#20), filed December 4, 2007. The Court has also considered Plaintiff's Opposition (#22), filed December 21, 2007, and Defendants' Reply (#26), filed January 11, 2008.

## BACKGROUND

The undisputed facts in this case are very limited. Plaintiff filed the instant action for an alleged violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. Plaintiff was a full-time admissions coordinator for Defendant Kindred Hospital Las Vegas ("Hospital"), from February 23, 2004, to April 7, 2006. On January 30, 2006, Plaintiff began FMLA leave after the birth of her child. During the week of February 20, 2006, prior to her return, Plaintiff alleges that she stopped into the Hospital to introduce her new son to her co-workers, only to find her desk cleared off, her workstation dismantled, and all of her personal items removed. The remaining facts are highly disputed.

Approximately one month later, on or about March 27, 2006, Plaintiff contacted the Hospital's human resources department to confirm her return date, which was set for April 24, 2006. At this time, Plaintiff alleges that she inquired about her job because she learned of recent staff turnover and was told to contact Susan Gurian in the admissions department. Gurian allegedly informed Plaintiff that her position as admissions coordinator was no longer available to her. Gurian then told Plaintiff that she could fill a vacant insurance verifier position and that in doing so Plaintiff would lose her seniority, would have to work weekends, could not work the same hours she previously did, and that she did not know whether her pay would change. When informing Plaintiff of the changes, Plaintiff contends that Gurian was hostile and displayed a demeanor that indicated to Plaintiff she was no longer welcome in the admissions office.

Plaintiff thereafter contacted Cita Laussen, the human resources coordinator, who confirmed that the only available position was that of the insurance verifier. Due to the elimination of her position and Gurian's hostile attitude, Plaintiff argues she was forced to resign. She further alleges that another employee, Jolicia Murray, a licensed practical nurse who covered

Plaintiff's duties during her leave, is the new admissions coordinator notwithstanding the Hospital's excuse that Plaintiff's position was being filled by a registered nurse.

Defendants vehemently dispute Plaintiff's version of the facts and argue that Plaintiff knew of the Hospital's restructuring prior to her FMLA leave and that upon hearing of the changes to her department, Plaintiff became angry and quit. Defendants now move for summary judgment on Plaintiff's sole cause of action—violation of the FMLA—on the grounds that Plaintiff was offered an equivalent position, that she voluntarily resigned, that any change in position was unrelated to Plaintiff's having taken leave, and that she suffered no damages. Defendants further move to strike certain evidence. For the following reasons, the Court denies Defendants' Motions. Additional facts bearing on the Court's decision are outlined below.

**DISCUSSION**

**I. Motion to Strike**

Defendants move to strike Plaintiff's Exhibit 12, a letter written by a representative of Defendants that they purport to be settlement discussions. In response to an undisclosed demand by Plaintiff, the letter responds: "your demand is respectfully rejected as we find no merit to the FMLA violations made by [Plaintiff]." It continues, "I am hopeful that once you have had an opportunity to review our response, you will agree and will advise [Plaintiff] not to pursue the matter further," and closes with an invitation to "discuss this further."

Federal Rule of Evidence 408(a)(2) precludes from evidence, "statements made in compromise negotiations regarding the claim." While Defendants attempt to characterize the letter as a compromise negotiation, the language demonstrates a complete rejection of Plaintiff's demand and makes clear that there is no intention of compromising or negotiating. The fact that the letter concludes with an invitation to discuss the matter further does not recant the earlier rejection. Simply put, Defendants ended any attempted negotiation in their summary rejection, and their further statements are not rendered inadmissible under Rule 408. Accordingly, Defendants' Motion to Strike is denied.

**II. Motion for Summary Judgment**

    **A.  Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1148 (D. Nev. 2005) (citations omitted).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

    **B. The Family and Medical Leave Act**

The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this [Act]." 29 U.S.C. § 2615(a)(1). It creates two substantive employee rights: the right to take FMLA leave and the right to be reinstated to the same or equivalent job upon return. *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). The FMLA does not entitle employees to any rights, benefits, or positions to which they would not have been entitled had they not taken leave. *Id.* It simply guarantees that an employee's taking leave will not result in a loss of job security or in

other adverse employment actions. *Id.* The Parties do not dispute that Plaintiff was properly entitled to leave but dispute whether she was reinstated to the same or equivalent position. Plaintiff has the burden to show by a preponderance of the evidence that she was denied a benefit to which she was entitled, without regard to the employer's intent. *Id.* Defendants carry the burden of proving that the dismissal or change in position was not related to the employee's FMLA leave. 29 C.F.R. § 825.216 ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

### 1. Same or Equivalent Position

Plaintiff argues that the insurance verifier position offered to her was not equivalent to her prior job. An "equivalent position" is "one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). Where the differences between the job functions of the positions at issue are de minimis, no violation of the FMLA occurs. § 825.512(f) ("The requirement that an employee be restored to the same or equivalent job . . . does not extend to de minimis or intangible, unmeasurable aspects of the job."). Defendants argue that any differences between the admissions coordinator and insurance verifier positions are de minimis.

Defendants first contend that it is undisputed that had Plaintiff returned as an insurance verifier, she would have retained the same pay, benefits, and hours. This is anything but undisputed. Viewing the evidence in the light most favorable to Plaintiff, the evidence suggests that at the time of her resignation, neither Gurian nor the human resources department could verify that her pay would not change if she accepted the only position offered to her, the insurance verifier position. Further, she would be required to work one Saturday per month, which she did not work prior, and claims that her hours could not be guaranteed. Defendants do not dispute that

5

Plaintiff would have been required to work a weekend shift, but dispute Plaintiff's assertion that her hours would have changed.

Plaintiff further contends that she would have lost her seniority in the office and testified that she received a supervisory pay differential of $1.60 per hour for being a "lead." Defendants deny that any loss of seniority would have occurred and contest that Plaintiff was ever a lead. They attribute the pay differential not to a supervisory role but to a change in categorization of her position from marketing to business. The record is unclear whether she would have maintained this differential if she accepted the new position.

Regarding the characteristics of the new position, Defendants argue that any differences are de minimis. Defendants claim that both positions share the common goal to "clear the way" for potential patients to be admitted to the Hospital, involve significant amounts of paperwork and time on the telephone, and fall under the same official title in the Hospital's personnel system: admissions associate. The only difference they note is that the admissions coordinator works with Hospital personnel to find bed space for patients, while the insurance verifiers call insurance companies to determine the parameters of coverage.

In stark contrast to Defendants' description, Plaintiff argues that the insurance verification is an entry-level position that requires little skill, little initiative, and no coordination with other departments. To the contrary, she claims that the admissions coordinator served on committees, interviewed new hires, and developed policies, procedures, and training materials for the admissions department. In support, she submits the Hospital's job descriptions of each position showing that, in addition to substantive differences in job duties, an admissions coordinator position requires a minimum of three years experience in the health care field while the insurance verifier has no educational or experience prerequisites. She concludes that these differences render the positions not equivalent. 29 C.F.R. § 825.215(a) (equivalent positions require the same skill, effort, responsibility and authority); *see Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 542 (E.D. Mich. 2003) (finding that employee was not reinstated to an equivalent

position where the new position, although carried equal pay and benefits, was not as sophisticated and did not require a similar level of education and training).

Plaintiff has sufficiently raised a genuine issue of material fact as to whether the two positions were equivalent. Viewing the evidence in favor of Plaintiff, a reasonable jury could conclude that a transfer to the insurance verifier position was of lesser stature than that of an admissions coordinator. Notwithstanding this finding, Defendants argue that because Plaintiff voluntarily resigned, no FMLA violation occurred.

**2. Plaintiff's Resignation**

Plaintiff argues that she was forced to resign after Defendants refused reinstatement to her prior position or its equivalent. The First Circuit has held that whether an employee voluntarily resigns can be a question of fact for the jury. *Watkins v. J&S Oil Co.*, 164 F.3d 55, 60 (1st Cir. 1998). In *Watkins*, an employer told an employee on FMLA leave that his position as a store manager was no longer available but that he could "bid" on an available office position. *Id.* at 58. On the day the employee's leave was set to expire, the manager again confirmed that his prior position was unavailable, to which the employee responded, "I think we're going to part company." *Id.* at 59. The First Circuit upheld a jury finding that the employee's statement was not a voluntary resignation but rather a recognition that the employer refused to offer him reinstatement to an equivalent position. *Id.*

Defendants argue that *Watkins* is distinguishable because the employee waited until his leave expired to call his employer, whereas here Plaintiff resigned prior to its expiration. The Court does not interpret the FMLA as requiring an employee to make a futile attempt to return after an employer unequivocally communicates that the only available position is one that violates the employee's rights under the FMLA. Like the employee in *Watkins*, Plaintiff argues here that her resignation was a recognition of Defendants' violative conduct.

Defendants admit that discussions did occur in Plaintiff's absence between Gurian and management personnel about removing Plaintiff to the insurance verifier position. However,

7

they defend this on the ground that at the time Plaintiff resigned, no final determination was made regarding the change in her position. To counter, Plaintiff submits an email dated prior to her resignation wherein Gurian writes that she "explained to [Plaintiff] that she would be trained as an insurance verifier . . . and that she would be working 1 Saturday or so per month . . . . I also did remind [Plaintiff] that she could accept or refuse the insurance verifier position." She also submits a letter wherein a Kindred Healthcare, Inc. representative states that when Plaintiff contacted her supervisor prior to her return, "it was confirmed that the Admissions Coordinator position was now clinical and that [Plaintiff] was not qualified to continue in it." From this evidence, a reasonable jury could conclude that the Hospital's decision to not reinstate Plaintiff to her prior position was conclusive.

Defendants next contend that even if Gurian told Plaintiff she could not return to her former position, Gurian did not have authority to make such a decision. Thus, Defendants conclude, Plaintiff resigned when she was still "officially" the admissions coordinator. Plaintiff responds that even if Gurian did not have authority, her representation that Plaintiff's job was changed to insurance verifier was ratified by the Hospital. Gurian's email wherein she recounts her discussion of the change with Plaintiff was carbon copied to various Hospital personnel, including Michael Fenello, CEO of the Hospital, and Fred Herrera, the Area Director of human resources at that time. Despite their knowledge of Gurian's representations, no one told Plaintiff that her former position was still available to her.

Plaintiff has sufficiently raised a triable issue as to whether she voluntarily resigned. Should a reasonable jury conclude that the admissions coordinator and insurance verifier positions are not equivalent, it could further find that Plaintiff's resignation merely acknowledged Defendants' violation of the FMLA by not reinstating her to the same or equivalent position. Despite these genuine issues of material fact, Defendants next argue that any changes in Plaintiff's position would have occurred even if she had not taken FMLA leave.

/ /

AO 72
(Rev. 8/82)

### 3. Inevitable Changes

"An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would otherwise not have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a).

Defendants argue that regardless of whether Plaintiff took FMLA leave, she would have been replaced by a registered nurse. They contend that a nurse was better suited to address the medical issues that frequently arose in Plaintiff's position and that Plaintiff was aware of this change prior to her absence. To show awareness, they argue that before leaving, Plaintiff inquired whether she would still have a job upon her return. Defendants further argue that Plaintiff participated in the interviewing process for the new "Nurses Admissions Coordinator" position that resulted in the hiring of both Gurian and Plaintiff's part-time replacement during her absence, Jolicia Murray. The record is unclear whether Gurian and Murray were hired before or after Plaintiff began her leave.

Plaintiff counters by asserting that the decision to replace her with a licensed nurse came only after Defendants noticed how the office ran in Plaintiff's absence. She contends that before she left, the Hospital assured her that Gurian and Murray were additional employees not intended to replace anyone. Plaintiff theorizes that during her leave, Gurian enjoyed working with Murray and it was only at that time that any "reevaluation" of Plaintiff's position was discussed. Plaintiff finds it particularly telling that Murray, a licensed practical nurse, began performing the same job duties that the Hospital told Plaintiff should be performed by a registered nurse. And last, Plaintiff claims that the Hospital's own job description of the admission coordinator, which requires either a clinical license *or* three years of experience in the health care field, refutes its excuse that she was no longer qualified for the very position she fulfilled prior to her leave.

The Court finds that Plaintiff has raised a sufficient genuine issue of material fact on the issue of whether Plaintiff would have been eliminated from her position had she not taken leave. Based on the evidence, a reasonable jury could find that Defendants' decision to replace Plaintiff, if at all, occurred during her absence. Despite the foregoing triable issues of fact, Defendants argue that they are nevertheless entitled to summary judgment because Plaintiff suffered no damages.

**4. Damages**

Under the FMLA, an employer's liability for damages include "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(I). Defendants maintain that because Plaintiff voluntarily resigned, she suffered no damages. Because the Court already found a genuine issue of material fact as to whether Plaintiff's resignation was voluntary, Defendants' argument fails. Accordingly, Defendants' Motion for Summary Judgment is denied.

**C. Additional Arguments Raised by the Parties**

The Court notes its disregard of the Parties' arguments concerning constructive discharge. As discussed above, Plaintiff need only show that she was denied reinstatement or not restored to the same or equivalent position. Such can be accomplished without showing that she was constructively discharged.

The Parties also contest or misconstrue each others' use of the term "adverse employment action." The term is typically found in retaliation or discrimination cases, neither of which are asserted here. The only "adverse" employment action Plaintiff must show is that Defendants did not reinstate her to the same or equivalent position.

**III. Properly Named Defendants**

Defendants contend that Kindred Hospitals West, LLC, Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc. are improper Defendants. Under the FMLA, only an employee's employer may be held liable for statutory violations. *Moreau v. Air France*, 356 F.3d

10

942 (9th Cir. 2004) (finding airline not employer of contract employees for FMLA purposes). Plaintiff does not appear to oppose the dismissal of Kindred Hospitals West, LLC or Kindred Healthcare Operating, Inc. Therefore, those Defendants are hereby dismissed. Plaintiff argues, however, that Kindred Healthcare, Inc. is a joint employer with the Hospital.

To determine whether a joint employment relationship exists, a court evaluates the totality of the circumstances and the "economic reality" of the situation, including: "(A) [t]he nature and degree of control of the workers; (B) [t]he degree of supervision, direct or indirect, of the work; (C) [t]he power to determine the pay rates of the methods of payment of the workers; (D) [t]he right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (E) [t]he preparation of payroll and the payment of wages." *Moreau*, 356 F.3d at 947. These factors are non-exhaustive and courts will look to "all factors relevant to the particular situation." *Id.* (internal quotations and citations omitted).

The evidence shows that Plaintiff both applied for her FMLA leave and enrolled in her general employee benefit program with Kindred Healthcare, Inc., thereby indicating some type of relationship between Plaintiff and the company. Kindred Healthcare also creates the employee handbook, provides benefits, human resources forms and support to employees, and created the policies and procedures to be followed by the Hospital. In looking to the totality of the circumstances and the factors relevant to FMLA leave, the evidence indicates that Kindred Healthcare had some involvement in making employment decisions with respect to Plaintiff's leave. The Court therefore concludes that Plaintiff has raised a genuine issue of material fact on Kindred Healthcare's liability for any damages Plaintiff may have suffered.

/ /

/ /

/ /

/ /

/ /

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#16) is DENIED.

IT IS FURTHER ORDERED that Defendants Kindred Hospitals West, LLC and Kindred Healthcare Operating, Inc. are dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (#20) is DENIED.

Dated: January 23, 2008.

_____
ROGER L. HUNT
Chief United States District Judge